# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA** *ex rel*. **CHRIS RIEDEL**, an individual,

2605 South Winchester Boulevard
Campbell, CA 95008

          Plaintiffs,

   vs.

**ATHEROTECH, INC.**, a Delaware corporation;

2100 Southbridge Parkway #482
Birmingham, AL 35209

          Defendant.

Civil Case No. _____

---

## COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATIONS OF THE FALSE CLAIMS ACT

### DEMAND FOR JURY TRIAL

### [FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)]

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    JURISDICTION AND VENUE ..................................................................... 2

III.   PARTIES ........................................................................................................ 3

IV.   OVERVIEW OF THE SCHEME ................................................................. 3

V.    DEFENDANT VIOLATED THE FALSE CLAIMS ACT BY
      PROVIDING KICKBACKS IN EXCHANGE FOR THE REFERRAL
      OF "PULL-THROUGH" MEDICARE AND MEDI-CAL BUSINESS ..................... 6

VI.   DEFENDANT VIOLATED THE FALSE CLAIMS ACT BY BILLING
      FOR MEDICALLY UNNECESSARY LABORATORY TESTS ................................ 8

VII.  CAUSES OF ACTION ................................................................................... 9

      FIRST CAUSE OF ACTION
      ON BEHALF OF THE UNITED STATES
      FEDERAL FALSE CLAIMS ACT,
      PRESENTING FALSE CLAIMS
      31 U.S.C. § 3729(a)(1)(A) ............................................................................ 9

      SECOND CAUSE OF ACTION
      ON BEHALF OF THE UNITED STATES FEDERAL FALSE CLAIMS ACT,
      MAKING OR USING FALSE RECORDS OR
      STATEMENTS MATERIAL TO PAYMENT OR
      APPROVAL OF FALSE CLAIMS
      31 U.S.C. § 3729(a)(1)(B) ............................................................................ 10

      THIRD CAUSE OF ACTION
      (IN THE ALTERNATIVE) ON BEHALF OF THE
      UNITED STATES FEDERAL FALSE CLAIMS ACT,
      RETENTION OF PROCEEDS TO WHICH NOT ENTITLED
      31 U.S.C. § 3729(a)(1)(G) ............................................................................ 11

VIII. PRAYER FOR RELIEF ................................................................................. 11

DEMAND FOR JURY TRIAL ................................................................................. 14

Plaintiffs UNITED STATES OF AMERICA ("United States"), by and through Relator CHRIS RIEDEL, alleges as follows:

## I.   INTRODUCTION

1.    Over the past several years, Defendant ATHEROTECH, INC. ("Atherotech") has perpetrated a multi-million dollar fraud on U.S. taxpayers through a Medicare kickback scheme. Defendant has provided illegal kickbacks in several forms to doctors and clinics in order to induce those doctors and clinics to refer Medicare business to them. The kickbacks take the following forms, as described in detail in this Complaint:

2.    Defendant promises to doctors that it will never collect more than $39 in co-payments or patient deductible payments from the doctors' privately-insured patients. This is of great benefit to the doctors, who are able to attract and retain the business of patients by promising low co-payments or patient deductible payments no matter how many tests the patient receives. In exchange for this benefit, the doctors send all of their lipid-related business, including Medicare business, to Defendant. As such, the waiver of deductibles and co-payments constitutes illegal remuneration, designed by Defendant to "pull-through" higher-paying Medicare business to Defendant. Furthermore, discounting the patient's co-payment or deductible portion is illegal under the laws of several states. Lipid panels and related tests are among the most frequently ordered – and expensive – lab tests.

3.    These practices constitute an illegal kickback scheme, no more legal than if Defendant simply handed doctors envelopes of cash in exchange for Medicare referrals.

4.    Additionally, Defendant systematically bills Medicare for medically unnecessary tests. Specifically, Atherotech's Initial Panel includes a VAP test and an Lp(a) test. Both the VAP test and Lp(a) test measure lipoproteins, and the VAP already includes an Lp(a)

1

component.  There is no medical benefit to including both of these tests and the separate Lp(a)

test uncovers no additional medical information.  Every bill to Medicare for an Initial Panel that

contains a VAP test and an Lp(a) test is a False Claim.

5.      Medicare is administered by the United States government, and provides health

coverage to people 65 years of age and older.  Medicare's costs are staggering and continue to

grow rapidly.  In 2007, Medicare expenditures accounted for 16% of all Federal spending –

second only to Social Security and Defense.  Knowing that the Federal Government lacks the

ability to track the massive amount of Medicare money as it flows through the complex

healthcare delivery system, unscrupulous companies see Government money as an easy source

for padding their profits.  Defendant's business model is founded upon the abuse of the Medicare

program – a program designed to benefit senior citizens, not private companies.

6.      In engaging in these illegal practices Defendant is not only cheating the system,

but also driving competitors out of the marketplace, thereby reducing the quantity and quality of

treatment options for elders.

7.      This is a *qui tam* action for violation of the Federal False Claims Act (31 U.S.C.

§§ 3150 *et seq.*), to recover treble damages, civil penalties and attorneys' fees and costs for

Plaintiffs, and on behalf of the United States for fraudulent Medicare billings.  Non-public

information personally known to Relator Chris Riedel ("Riedel") serves as the basis of this

action.

## II.   JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 31 U.S.C. sections 3730(b)

and 3732(a), which confer jurisdiction on this Court for actions brought under the Federal False

Claims Act, and authorize nationwide service of process.  Venue is proper in this district

pursuant to 31 U.S.C. section 3732(a), as Defendant transacts business in the District of Columbia.

## III.   PARTIES

9.      The plaintiff in this action is the UNITED STATES OF AMERICA ("United States"), by and through Relator CHRIS RIEDEL.

10.     Relator CHRIS RIEDEL is an individual engaged in the commercial reference laboratory business.

11.     Defendant ATHEROTECH is a Delaware corporation with its principal place of business in Alabama.

## IV.   OVERVIEW OF THE SCHEME

12.     Atherotech is a medical laboratory that specializes in advanced lipid testing. Advanced lipid testing helps identify coronary heart disease risk factors that standard cholesterol and other basic blood tests do not. Advanced lipid tests tend to be more expensive than more basic medical laboratory tests, and consequently can result in higher profit margins for the laboratories that provide them.

13.     Because the purpose of advanced lipid testing is generally to detect, prevent, and manage coronary heart disease, the patient population that requires the testing is largely comprised of senior citizens covered by Medicare. On information and belief, more than 30% of the tests conducted by Atherotech are for patients covered by Medicare.

14.     Atherotech is reimbursed by Medicare a total of over $486 for its Initial Panel lipid test, per patient. After the initial panel, follow-up panels are often ordered four times per year. Atherotech's profit margins on its Medicare business are extraordinary. Consequently,

3

Defendant – desperate to capture and retain Medicare business – has pushed its marketing techniques into blatantly illegal territory.

15.     Specifically, in order to capture and retain Medicare business, Defendant has offered several forms of illegal remuneration to physician customers in order to induce referral of Medicare business.

16.     The first form of illegal remuneration is the capping and waiver of private insurance co-payments. A significant portion of a physician's non-Medicare patients will be covered by private insurance. Most private insurance companies require that a patient ordering a laboratory test make a co-payment of approximately 20% of allowable charges to the laboratory. The co-payments can be significant to patients, especially those being treated with statin therapy, who require regular medical treatment and lipid testing with attendant co-payments at least four times per year. For example, in the case of the Initial Panel, the co-payment, if charged, would be nearly $100. Accordingly, minimizing the co-payment of patients is a significant benefit that a physician can provide to his or her patients. Knowing this, Defendant promises physicians that it will never charge more than $39 for copayment, as long as the physicians send all of their lipid-related business – including Medicare business – to the Defendant's laboratory. Atherotech waives the remaining fee, writing off hundreds of dollars of charges for some patients.

17.     The second form of illegal remuneration is the capping and waiver of private insurance deductible payments. Most private insurance companies require that a patient ordering a laboratory test make a deductible payment to the laboratory until the patient has met a deductible amount each year. The deductible payments can be significant to patients. For example, in the case of the Initial Panel, the deductible payment, if charged, could be as much as $486, depending upon the patient's insurance plan and medical care. Accordingly, the waiver of

a deductible payment is a significant benefit that a physician can provide to his or her patients.
Knowing this, Defendant promises physicians that it will never charge more than $39 for
deductibles, as long as the physicians send all of their lipid-related business – including
Medicare business – to the Defendant's laboratory. Atherotech waives the remaining fee,
writing off hundreds of dollars of charges for some patients.

18.     Though Defendant loses money on uncollected co-payments and deductibles, it
more than makes up the difference with the profits it earns on the Medicare referral business.
This Medicare business, induced by the co-payment waiver for privately insured patients, is
referred to in the industry as "pull-through" business. The majority of Medicare patients are
receiving statin therapy, and therefore receive lipid testing four times per year. This amounts to
annual Medicare payments of over $1,944 per patient.

19.     Limiting co-payments and deductibles to induce the referral of pull-through
Medicare business constitutes illegal inducement, and is strictly prohibited by Federal anti-
kickback laws and certain state statues.

20.     In addition to providing illegal kickbacks, Defendant overcharges Medicare by
systematically billing for medically unnecessary tests. For example, Atherotech's Initial Panel
test bundle includes both an VAP test and an Lp(a) test. The VAP test already includes an Lp(a)
component, making the inclusion of an additional Lp(a) test duplicative. There is no medical
benefit to including both of these tests since they provide the same medical information and
treatment would not be affected by including both tests. Both tests are pre-selected by Defendant
as part of its panels; doctors do not have the option to de-select one of the tests. Defendant then
performs and bills Medicare for each of the tests. Defendant charges Medicare $35.16 for the

VAP test, and $18.34 for the Lp(a) test. Each time it does so, Atherotech violates the False Claims Act.

## V.   DEFENDANT VIOLATED THE FALSE CLAIMS ACT BY PROVIDING KICKBACKS IN EXCHANGE FOR THE REFERRAL OF "PULL-THROUGH" MEDICARE AND MEDI-CAL BUSINESS

21.    Defendant violated the False Claims Act by charging Medicare for lab tests that were referred to Defendant by providers because of kickbacks offered to those providers by Defendant. Defendant's practices are unlawful as kickback schemes, strictly prohibited by Medicare statutes. Specifically, 42 U.S.C. § 1320a-7b(b)(2)(A) prohibits "Illegal remunerations" for "Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) *directly or indirectly, overtly or covertly*, in cash or in kind to any person to induce such person  to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . ."  42 U.S.C. § 1320a-7b(b)(2)(A) (emphasis added).

22.    Interpretations of this language by the Federal authorities provide useful guidance in applying these anti-kickback laws, and establish that Defendant has violated the anti-kickback laws of the United States through the conduct described herein. For example, the Federal Department of Health and Human Services, Office of the Inspector General ("OIG"), reaffirmed on May 9, 2008, that: "[W]hen a laboratory offers or gives an item or service for free **or less than fair market value to a referral source, an inference arises that the item or service is offered to induce the referral of business**." OIG Advisory Opinion No. 08-06. An anti-kickback "violation arises if the discount whatever its size is **implicitly or explicitly tied** to referrals of" government-funded business. OIG Opinion Letter, April 26, 2000.

6

23.     In October 1994, the OIG issued a Special Fraud Alert, entitled "How Does the Anti-Kickback Statute Relate to Arrangement for the Provision of Clinical Lab Services?"  As an example of a situation giving rise to an inference of an illegal kickback, the Special Fraud Alert cited laboratories that waive charges to providers for lab tests of managed care patients (such as the co-payments of patients here).

24.     By waiving the deductible and co-payment, the physician is no longer subject to any restraint on whether tests are medically necessary because they are free to the patient. Indeed, by minimizing the patient's financial stake in the transaction, Defendants have neutralized one of the market's inherent checks on frivolous treatment.

25.     Defendant violated the anti-kickback laws described in these OIG opinions by waiving co-payments and deductibles, and both implicitly and explicitly tying these kickbacks to the referral of Medicare business.  Accordingly, Defendant violated the Federal anti-kickback provisions.  Defendant presented to Medicare claims for reimbursement of laboratory tests the referral of which was induced, in whole or in part, directly or indirectly, overtly or covertly, by the provision of the kickbacks described above.  Each of those claims constitutes a violation of the Federal False Claims Act.

26.     At all times relevant hereto, Defendant knew that Federal law prohibited its giving or receiving these kickbacks.  Defendant certified, both explicitly and implicitly, that each claim it submitted to Medicare would fully comply with all statutes and regulations, including the anti-kickback provisions, and that as Medicare providers, it would comply with all pertinent statutes and regulations, including the anti-kickback provisions.

27.     Each claim for payment submitted by Atherotech, from at least 2009 to the present, to Medicare that was referred to Defendant by a provider who received any of the forms

7

of remuneration described above from Defendant constitutes a false claim in violation of the

False Claims Act (31 U.S.C. § 3729 *et seq.*).  Over this time period, Defendant has submitted

thousands of such claims for payments, and millions of dollars from the Government as a result

of these illegal kickbacks.

## VI.   DEFENDANT VIOLATED THE FALSE CLAIMS ACT BY BILLING FOR MEDICALLY UNNECESSARY LABORATORY TESTS

28.    Atherotech violated the False Claims Act by submitting claims for payment for

laboratory testing services that Defendant knew were not medically necessary.  Section 1862 of

the Social Security Act provides, in pertinent part:  "Notwithstanding any other provision of this

title, no payment may be made under [Medicare] for any expenses incurred for items or services .

. . which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury

or to improve the functioning of a malformed body member."  42 U.S.C. 1395y(a)(1)(A).

29.    Atherotech violated 42 U.S.C. 1395y(a)(1)(A) by ordering medically unnecessary

laboratory tests.  Atherotech's Initial Panel contains duplicative lipid testing components with no

medical benefit, as they provide the same medical information and treatment is not affected by

including both tests.  Medicare and other Federal health care programs require as a condition of

coverage that services rendered must be reasonable and medically necessary.  42 U.S.C. §

1395y(a)(1)(A).  Defendant presented to Medicare claims for reimbursement of laboratory tests

which were neither reasonable nor necessary.  As such, each of these claims constitutes a false

claim in violation of the False Claims Act (31 U.S.C. § 3729 *et seq.*).  Defendant certified, both

explicitly and implicitly, that each claim it submitted to Medicare would fully comply with all

statutes and regulations, and that as Medicare providers it would comply with all pertinent

statutes and regulations.

## VII.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### ON BEHALF OF THE UNITED STATES
### FEDERAL FALSE CLAIMS ACT, PRESENTING FALSE CLAIMS
### 31 U.S.C. § 3729(a)(1)(A)

30.  Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 29 of this Complaint as though fully set forth herein.

31.  Defendant knowingly (as defined in 31 U.S.C. § 3729(b)(1)) presented or caused to be presented false claims for payment or approval to an officer or employee of the United States.

32.  Defendant knowingly presented false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges by the Medicare program that were higher than it was permitted to claim or charge by applicable law.  Among other things, Defendant knowingly submitted false claims for Medicare business that was obtained by means of, and as a result of, illegal kickbacks.

33.  Defendant knowingly made, used, and caused to be made and used false certifications that its claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

34.  The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(A) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

/ / /

9

**SECOND CAUSE OF ACTION
ON BEHALF OF THE UNITED STATES
FEDERAL FALSE CLAIMS ACT, MAKING OR USING FALSE RECORDS OR
STATEMENTS MATERIAL TO PAYMENT OR APPROVAL OF FALSE CLAIMS
31 U.S.C. § 3729(a)(1)(B)**

35.     Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 29 of this Complaint as though fully set forth herein.

36.     Defendant knowingly (as defined in 31 U.S.C. § 3729(b)(1)) made, used, or caused to be made or used false records or statements material to false or fraudulent claims.

37.     Defendant knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, that were material to the payment or approval of charges by the Medicare program that were higher than it was permitted to claim or charge by applicable law. Among other things, Defendant made and used bills for Medicare business that was obtained by means of, and as a result of, illegal kickbacks.

38.     Defendant knowingly made, used, and caused to be made and used false certifications that its claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

39.     The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(B) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

/ / /

## THIRD CAUSE OF ACTION
### (IN THE ALTERNATIVE)
## ON BEHALF OF THE UNITED STATES FEDERAL FALSE CLAIMS ACT, RETENTION OF PROCEEDS TO WHICH NOT ENTITLED
## 31 U.S.C. § 3729(a)(1)(G)

40.     Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 29 of this Complaint as though fully set forth herein.

41.     In the alternative, Defendant knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

42.     As discussed above, Defendant received far more money from the Medicare programs than it was entitled to.  Defendant knew that it received more money than it was entitled to, and avoided its obligation to return the excess money to the Government.

43.     The conduct of Defendant violated 31 U.S.C. § 3729(a)(1)(G) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs by and through Relator, pray judgment in its favor and against Defendant as follows:

1.     That judgment be entered in favor of plaintiff UNITED STATES OF AMERICA ex rel. CHRIS RIEDEL, and against Defendant ATHEROTECH, according to proof, as follows:

a.     On the First Cause of Action (Presenting False Claims (31 U.S.C. § 3729(a)(1)(A))) damages as provided by 31 U.S.C. § 3729(a)(1), in the amount of:

11

i.      Triple the amount of damages sustained by the Government;

ii.     Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

iii.    Recovery of costs;

iv.     Pre- and post-judgment interest;

v.      Such other and further relief as the Court deems just and proper;

b.   On the Second Cause of Action (False Claims Act; Making or Using False Records or Statements Material to Payment or Approval of False Claims (31 U.S.C. § 3729(a)(1)(B))) damages as provided by 31 U.S.C. § 3729(a)(1) in the amount of:

i.      Triple the amount of damages sustained by the Government;

ii.     Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

iii.    Recovery of costs;

iv.     Pre- and post-judgment interest;

v.      Such other and further relief as the Court deems just and proper;

d.   On the Third Cause of Action (False Claims Act, Retention of Proceeds to Which Not Entitled (31 U.S.C. § 3729(a)(1)(G))) damages as provided by 31 U.S.C. § 3729(a)(1) in the amount of:

i.      Triple the amount of damages sustained by the Government;

ii.     Civil penalties of Ten Thousand Dollars ($10,000.00) for each false claim;

iii.    Recovery of costs;

       iv.     Pre- and post-judgment interest;

       v.     Such other and further relief as the Court deems just and proper.

2.     Further, Relator, on his own behalf, pursuant to 31 U.S.C. section 3730(d),
requests that he receive such maximum amount as permitted by law, of the proceeds of this
action or settlement of this action collected by the United States, plus an amount for reasonable
expenses incurred, plus reasonable attorneys' fees and costs of this action. Relator requests that
his percentage be based upon the total value recovered, including any amounts received from
individuals or entities not parties to this action.

Respectfully Submitted,


Dated: August 24, 2012       **COTCHETT, PITRE & McCARTHY, LLP**

                 By: _____
                     NIALL P. McCARTHY (to be admitted *pro hac vice*)
                     JUSTIN T. BERGER (to be admitted *pro hac vice*)
                     ERIC J. BUESCHER (DC SBN 1008476)


Dated: August 28th, 2012      **BERK LAW PLLC**

                 By: _____
                     STEVEN N. BERK (DC SBN 432874)

                 *Attorneys for Relator*

## DEMAND FOR JURY TRIAL

Relator CHRIS RIEDEL hereby demands a jury trial on all issues so triable.

Respectfully Submitted,

Dated:  August 24, 2012

**COTCHETT, PITRE & McCARTHY, LLP**

By: _____
      NIALL P. McCARTHY (to be admitted *pro hac vice*)
      JUSTIN T. BERGER (to be admitted *pro hac vice*)
      ERIC J. BUESCHER (DC SBN 1008476)

Dated:  August 28, 2012

**BERK LAW PLLC**

By: _____
      STEVEN N. BERK (DC SBN 432874)

*Attorneys for Relator*